UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY TERESA GIPE,                                                    Plaintiff,

v.                                            Civil Action No. 3:18-cv-584-DJH-CHL

MEDTRONIC, INC., et al,                                             Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Mary Teresa Gipe filed suit on behalf of her incapacitated son in state court against six defendants,[1] alleging that her son experienced a seizure and traumatic brain injury due to an over-delivery of insulin caused by malfunctions of his insulin pump and infusion set. (Docket No. 1-1, PageID # 33) Gipe alleges that Medtronic, Inc.; Unomedical Devices, SA de CV; and their respective subsidiaries (the Products Liability Defendants) designed, manufactured, marketed and sold the insulin pump and infusion set. (*Id.*) As to Defendant Greenhaven Apartments, Gipe claims that the apartment complex assumed a duty of protection when it installed multiple surveillance cameras on the premises. (*Id.*, PageID # 43) Defendant Medtronic, Inc. removed the case to this Court and filed a motion to sever Greenhaven. (D.N. 1; D.N. 4) In response, Gipe filed a motion to remand. (D.N. 14) Defendant Medtronic MiniMed, Inc. then filed its own notice of removal (D.N. 18) and motion to sever Greenhaven (D.N. 19). Gipe responded with a second motion to remand. (D.N. 31) Because the Court finds that it lacks subject-matter jurisdiction over

---

[1] The defendants listed in Gipe's complaint are Medtronic, Inc.; Medtronic Diabetes; Medtronic MiniMed, Inc.; Unomedical Devices, SA de CV; Unomedical A/S; and Greenhaven Apartments. (D.N. 1-1, PageID # 28-29) According to Medtronic MiniMed, MiniMed and Medtronic Diabetes are the same legal entity because MiniMed does business as Medtronic Diabetes. Therefore, only Medtronic, Inc. and MiniMed are discussed in this Opinion. (D.N. 18, PageID # 178)

1

this case, Gipe's initial motion to remand will be granted and her second motion to remand will be denied as moot, as will both motions to sever.

**I.**

According to the complaint, Gipe's son, William, is a Type I diabetic who used a mechanical pump and associated infusion set to administer insulin. (D.N. 1-1, PageID # 32) On July 26, 2017, he experienced severe hypoglycemia and suffered a seizure due to an over-delivery of insulin and experienced a delay in treatment, resulting in a traumatic brain injury. (*Id.*, PageID # 33) The parties dispute whether the seizure alone, the delay in treatment, or some combination of the two ultimately caused the son's brain injury.

Gipe alleges that the seizure was caused by a malfunctioning MiniMed Insulin Pump and Mio Infusion Set that her son was wearing at the time. (*Id.*) Medtronic announced a voluntary recall of all its MiniMed Infusion Sets less than two months after William's seizure, allegedly due to a defect in the vent membrane which Medtronic determined could lead to over-delivery of insulin. (*Id.*) Gipe alleges that the Products Liability Defendants designed, manufactured, marketed, and sold the insulin pump and infusion set used by her son. (*Id.*) Gipe asserts six claims against the Products Liability Defendants: negligence, strict liability, breach of warranty, failure to warn, a claim under the Kentucky Consumer Protection Act, and a claim for punitive damages. (*Id.*, PageID # 34-43, 44-45)

As to Greenhaven, Gipe alleges that the apartment complex voluntarily assumed a duty to provide a reasonable measure of protection to her son when it installed multiple surveillance cameras on the premises. (*Id.*, PageID # 43) She contends that Greenhaven breached that duty when more than two hours passed before the property manager viewed the surveillance camera footage and discovered William after his seizure. (*Id.*, PageID # 44) This led to a delay in

treatment that Gipe alleges caused, contributed to, or was a substantial factor in bringing about her son's permanent brain injury. (*Id.*)

In its Notice of Removal, Medtronic asserts that the Court has subject-matter jurisdiction because there is complete diversity among all "properly joined and severed" parties and the amount in controversy exceeds $75,000. (*Id.*, PageID # 1) Gipe filed both a response to Medtronic's Notice of Removal (D.N. 12) and a motion to remand (D.N. 14), arguing that (1) the Court does not have subject-matter jurisdiction because complete diversity does not exist; (2) Medtronic failed to obtain the consent of all defendants prior to removal; (3) the Court should not sever Greenhaven; (4) Greenhaven was not fraudulently joined; and (5) there is no fraudulent misjoinder. (D.N. 12) Gipe argues that complete diversity does not exist because she and Greenhaven are both citizens of Kentucky. (D.N. 1-1, PageID # 32; D.N. 12, PageID # 111) MiniMed then filed its own notice of removal (D.N. 18) and motion to sever (D.N. 19), which are almost identical to Medtronic's filings. (D.N. 19) Gipe argued that MiniMed could not file this second motion to sever (D.N. 29, PageID # 361), but then also filed a second motion to remand. (D.N. 31)

Medtronic argues that removal was proper for three reasons. (D.N. 1, PageID # 2) First, it asserts that the Court may retain jurisdiction of this matter by severing the claims against the non-diverse party, Greenhaven, pursuant to Rule 21. (*Id.*) Second, it argues that the Court should disregard Greenhaven's citizenship because the apartment complex is fraudulently joined. (*Id.*) Finally, Medtronic argues that the Court should disregard Greenhaven's citizenship because Greenhaven is fraudulently *mis*joined under Rule 20. (*Id.*) Medtronic also argues that Greenhaven's consent was not required or alternatively that the consent issue is moot because MiniMed filed its own notice of removal to which both Greenhaven and Medtronic consented. (D.N. 17, PageID # 171; D.N. 18; D.N. 18-7) The parties' respective arguments across the various

3

motions and responses are largely identical. (*See* D.N. 1; D.N. 4; D.N. 12; D.N. 14; D.N. 17; D.N. 18; D.N. 19; D.N. 20; D.N. 28; D.N. 29; D.N. 30; D.N. 31; D.N. 32; D.N. 33; D.N. 34; D.N. 35)

## II.

A defendant may remove any civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removing defendants bear the burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). In a diversity case, the removing party must show (1) that "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation," and (2) that the jurisdictional minimum amount in controversy is met. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)); *see* 28 U.S.C. § 1332(a). Once a case is removed, a plaintiff may bring a motion to remand under 28 U.S.C. § 1447(c). *Griffin v. Middlefork Ins. Agency*, No. 17-215-DLB, 2017 U.S. Dist. LEXIS 164274, at *2 (E.D. Ky. Oct. 4, 2017). Removal statutes are to be narrowly construed. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Accordingly, "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

When considering a motion to remand, the Court must examine whether the case was properly removed to federal court. *See Graves v. Standard Ins. Co.*, 66 F. Supp. 3d 920, 922 (W.D. Ky. 2014). "In a case removed to federal court, '[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal.'" *Arrington v. Nationwide Mut. Fire Ins. Co.*, No. 3:14-cv-322-DJH, 2015 U.S. Dist. LEXIS 23082, at *2 (W.D. Ky. Feb. 26, 2015) (quoting *Harper v. AutoAlliance Int'l*, 392 F.3d 195, 210 (6th Cir. 2004)). "In order to remove an action based solely on diversity jurisdiction, all properly joined defendants

must consent to removal, and no properly joined defendant may be a citizen of the state in which the action is brought." *Staubus v. Purdue Pharma, L.P.*, No. 2:17-CV-122-TAV-CLC, 2017 U.S. Dist. LEXIS 173759, at *5 (E.D. Tenn. Oct. 20, 2017) (citing 28 U.S.C. §§ 1441(b)(2), 1446(b)(2)(A)). This is known as the rule of unanimity. *See Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). If a non-diverse party has been joined as a defendant, then "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined" to defeat diversity.[2] *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1994) (citation and internal quotations omitted)). So long as there is "arguably a reasonable basis for predicting that state law might impose liability on the facts involved," then "joinder is proper, and the Court must remand the case to state court." *Sandusky v. Acuity, A Mut. Ins. Co.*, No. 3:17-cv-516-DJH-CHL, 2018 U.S. Dist. LEXIS 73839, at *5 (W.D. Ky. May 2, 2018) (citation and internal quotations omitted); *see also Coyne*, 183 F.3d at 493 ("Fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds.").

In this case, it is undisputed that complete diversity is not evident from the face of the complaint. (*See* D.N. 1, PageID # 7) Accordingly, the Court must employ the "judicially created doctrine of fraudulent joinder," which "provides an exception to the requirement of complete

---

[2] Medtronic incorrectly suggests in its Notice of Removal that finding Greenhaven unnecessary and dispensable would be sufficient grounds to sever it without having to first resolve the issue of whether Greenhaven is fraudulently joined. (D.N. 1, PageID # 14) Medtronic and MiniMed spend a significant portion of their motions discussing severance under Rule 21. (*See* D.N. 1, PageID # 7-15; D.N. 4-1, PageID # 90-92; D.N. 17, PageID # 164-170; D.N. 19-1, PageID # 276-278; D.N. 28, PageID # 348-349) But "the issue of subject matter jurisdiction is threshold to the court's authority to invoke its jurisdiction to proceed with an action." *Stone v. William Beaumont Hosp.*, 782 F.2d 609, 613 n.3 (6th Cir. 1986). Although the Sixth Circuit has held that a court may drop a non-diverse and dispensable party to achieve diversity, the case must otherwise properly be before the court. *See Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir. 1999).

diversity." *Coyne*, 183 F.3d at 493. Here, the Court finds that Greenhaven was not fraudulently joined, and removal was therefore improper.

**A.     Fraudulent Joinder**

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493 (citing *Alexander v. Elec. Data Sys. Co.*, 13 F.3d 940, 949 (6th Cir. 1994)). If there is a colorable basis for predicting that a plaintiff may recover against a non-diverse defendant, however, then the Court must remand the action to state court. *Id.* The sole inquiry is the viability of the plaintiff's claim. *Estate of Owens v. E.I. Dupont de Nemours & Co.*, No. 12-111-DLB, 2013 U.S. Dist. LEXIS 189836, at *10 (E.D. Ky. June 17, 2013) (referencing *Casias*, 695 F.3d at 432-33).

"In evaluating claims of fraudulent joinder, the Court must initially evaluate all the factual allegations in the [plaintiff's] state court pleadings in the light most favorable to the [p]laintiff[]." *Fulton Cty v. Underwriters Safety & Claims, Inc.*, No. 5:18-cv-138-TBR, 2019 U.S. Dist. LEXIS 729, at *7 (W.D. Ky. Jan. 3, 2019) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Poulus v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983)). "The standard to establish fraudulent joinder is a high one. It is even higher than the standard required by a motion to dismiss." *Id.* (citing *Cordle v. Merck & Co., Inc.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005)). "It is so high[] that the removing party must demonstrate that there is no glimmer of hope that the plaintiff could prevail against the non-diverse defendants in state court." *Id.* (citation and internal quotations omitted).

Under the doctrine of fraudulent joinder, the inquiry is whether Gipe had at least a colorable cause of action against Greenhaven in the Kentucky state courts. *See Jerome-Duncan*, 176 F.3d

6

at 907 (citing *Alexander*, 13 F.3d at 949). Therefore, the Court must look to Kentucky law to determine whether Gipe has a colorable claim against Greenhaven in asserting that a landlord voluntarily assumes a duty to provide a reasonable measure of protection to its tenants when it installs safety cameras on the premises. *Id.* As it stands, Kentucky law appears to be silent on this issue.

"A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Joinder v. Tran & P Props., LLC*, 526 S.W.3d 94, 100 (Ky. Ct. App. 2017) (citing *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012)). Defendants dispute whether Greenhaven voluntarily assumed a duty to protect Gipe's son. (*See* D.N. 1, PageID # 17-18; D.N. 20, PageID # 286-288)

In order to establish fraudulent joinder, Medtronic must show that there is no reasonable basis for predicting that a factfinder *might* find that Greenhaven assumed a duty to protect Gipe's son by installing surveillance cameras on the premises. *See Grigsby v. Ford Motor Co.*, No. 3:08-CV-108-S, 2008 WL 11358032, at *3 (W.D. Ky. July 18, 2008). "When determining whether a defendant has voluntarily assumed a duty to a plaintiff, Kentucky courts apply Section 323 of the Restatement (Second) of the Law of Torts." *Wilburn v. U.S.*, 616 F. App'x 848, 853 (6th Cir. 2015). Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Taylor v. United States*, 521 F. Supp. 185, 187 (W.D. Ky. 1981) (quoting Rest. (Second) of Torts § 323 (1965)). Medtronic argues that Greenhaven did not assume a duty because Gipe does not

7

allege that her son was aware of the surveillance cameras or that he acted in reliance upon them. (D.N. 17, PageID # 162) When making a determination regarding fraudulent joinder, "any disputed questions[,] fact[s,] and ambiguities in the controlling state law [should be resolved] . . . in favor of the non-removing party." *Alexander*, 13 F.3d at 949. At this stage of the litigation, it is difficult for the Court to conclude that Gipe and her son could not have possibly relied upon the installation of cameras, or that the failure to monitor the cameras did not increase the risk of harm to Gipe's son.

  1. <u>The Facts Available to the Court</u>

Medtronic cites *Wilburn* in support of its argument. (D.N. 17, PageID # 163) Although that case does interpret § 323, it points to a different outcome than the one suggested by Medtronic. In *Wilburn*, Tracy Burke was murdered by her estranged husband, Brent Burke, who was stationed at Fort Campbell as a military police officer for the U.S. Army. 616 F. App'x at 850. The plaintiffs argued that the government voluntarily assumed a duty to protect Tracy because (1) it instituted a policy and other regulations concerning firearms on base; (2) Tracy had expressed concerns about Brent to his command; and (3) a sergeant had confiscated a pistol from Brent. *Id.* at 853. In discussing § 323, the Sixth Circuit stated that the pertinent question was whether "the defendant's adoption of and subsequent failure to adhere to the policy increased the risk of harm to the plaintiff over the risk the plaintiff would have faced had the policy never been adopted at all." *Id.* at 854. The court then explained that the plaintiffs' arguments also required a showing that the army took some action upon which Tracy relied. *Id.* However, the Sixth Circuit reversed the district court's dismissal of the case. *Id.* at 861. The court of appeals found that it was premature to dismiss the complaint at the motion-to-dismiss stage without first affording the plaintiffs the opportunity to take discovery to explore what was said to Tracy during her interactions with command and

8

whether she was given a reason to believe that some other action would be implemented by the army to provide for her protection. *Id.* at 855.

Likewise, there are insufficient facts at this stage for the Court to find that Gipe's claim against Greenhaven lacks a colorable basis. As in *Wilburn*, the parties have not had the benefit of discovery, and there is no evidence to suggest that Gipe and her son did not rely on the surveillance cameras. There is no evidence in the record as to whether Greenhaven had a surveillance policy or security system. Gipe alleges that it took two hours for the property manager to view the surveillance footage and discover her son. (D.N. 1-1, PageID # 44) Greenhaven admits that it had surveillance cameras located on the property but denies that the property manager discovered William. (D.N. 1-5, PageID # 58) If the property manager did view the surveillance footage and discover William, that leads to a reasonable inference that the property manager may have been required to regularly check the footage and that Greenhaven had a monitoring system in place. Whether or not the property manager actually discovered Gipe's son would thus be important in determining whether Greenhaven assumed a duty under § 323. *See Wilburn*, 616 F. App'x at 855.

If Greenhaven had a monitoring policy in place, then its failure to monitor in accordance with that policy could arguably have increased the risk of harm to Gipe's son over the risk he would have faced had the policy not been adopted at all. *See* Rest. (2d) Torts, § 323. The applicability of § 323 will depend largely on the facts of the case developed in discovery. If there was no monitoring policy, Gipe's son would still perhaps have remained undiscovered for two hours. *See Wilburn*, 616 F. App'x 854. While at this stage the Court does not have all the facts, it is plausible that Gipe and her son were informed of a monitoring policy and that this was a factor in their decision to live at Greenhaven. *See Wright v. PRG Real Estate Mgmt.*, 826 S.E.2d 285, 294, 296 (S.C. 2019) (finding that the lower court erred in granting summary judgment for the

defendant where the record contained testimony that the plaintiff chose the apartment complex because there were security officers and this led to questions of fact that a jury must resolve to ascertain whether a duty of care arose in the case). Such representations may have led Gipe to allow her son to be in the laundry room unattended or without some other kind of protective measure. This scenario would satisfy either prong of the § 323 analysis. The Court is required to resolve all disputed questions of fact in favor of the non-removing party and, at this stage of the litigation, the Court cannot conclude that such a chain of inference is unreasonable. *See Alexander*, 13 F.3d at 949. If Gipe did have a separate motive in joining Greenhaven, it is immaterial to the Court's determination regarding fraudulent joinder. *See Jerome-Duncan*, 176 F.3d at 907. Further, it is not relevant to the Court's present inquiry whether Gipe's claims against Greenhaven will ultimately be successful. *Walker v. Philip Morris USA, Inc.*, No. 3:13-CV-560-CRS, 2014 U.S. Dist. LEXIS 41635, at *26 (W.D. Ky. Mar. 28, 2014) (noting that "fraudulent joinder does not arise simply because a claim may not succeed on the merits" (citation omitted)).

    2. Existing Case Law

Moreover, Kentucky case law is ambiguous as to whether a landlord assumes a duty of protection under § 323, whether such a duty arises when security cameras are provided, or whether a failure to monitor security cameras constitutes a breach of the duty to protect. *See Alexander*, 13 F.3d at 949. As to assumption of a duty generally, however, "Kentucky case law supports that a duty may be voluntarily assumed" and that "[a] duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefor[]." *Bray v. Dick*, No. 2012-CA-1958-MR, 2015 Ky. App. Unpub. LEXIS 81, at *24 (Ky. Ct. App. Feb. 6, 2015) (quoting *Estep v. B.F. Saul Real Estate Inv. Tr.*, 843 S.W.2d 911, 914 (Ky. Ct. App. 1992) (finding that since the defendants opted to attempt to clear their lot and sidewalks of ice and snow, they must act in a reasonable manner

or be liable for their failure, and that the question of whether they acted reasonably is a classic jury question)).

Although no court appears to have applied § 323 in this context, some courts have found a duty to protect where a landlord undertook to provide security. *See, e.g.*, *Holland v. Liedel*, 494 N.W.2d 772, 773, 775 (Mich. Ct. App. 1992) (finding that the landlord voluntarily assumed the duty to provide security because he provided a security guard, and that tenants could therefore assume the landlord continued to monitor their security when the guard was replaced with a camera system); *Scott v. Watson*, 359 A.2d 548, 555 (Md. 1976) ("We think it clear that even if no duty existed to employ the particular level of security measures provided by the defendants, improper performance of such a voluntary act could in particular circumstances constitute a breach of duty."). *But see Great N. Ins. Co. v. Ruiz*, 688 F. Supp. 2d 1362, 1379 (S.D. Ga. 2010) (interpreting § 324 of the Restatement (2d) of Torts in the context of residential fire prevention but finding that the plaintiffs provided no evidence that they detrimentally relied on the monitoring of the neighborhood association's surveillance cameras, noting that the neighborhood covenants explicitly stated that residents should not rely upon any security provided by the association); *Page v. Choice Hotels Int'l, Inc.*, No. 2:04-CV-13, 2005 U.S. Dist. LEXIS 6950, at *19 (W.D. Mich. Apr. 18, 2005) (finding that guests had no reason to assume they were constantly being monitored by the hotel staff because there was no evidence the guests were given any notice they were under surveillance); *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 850 (W.D. Tenn. 1995) (interpreting existing Tennessee state case law and finding that "from these cases . . . it is clear that undertaking to provide security would require affirmative acts far more substantial than the simple representations offered as evidence by the plaintiff").

Regardless of whether there exists any affirmative duty to provide security protection, some courts have recognized that if a landowner does undertake to furnish some form of protection, then it must be provided in a non-negligent manner. *See, e.g.*, *Kerns v. Methodist Hosp.*, 574 A.2d 1068, 1077 (Pa. Super. Ct. 1990) ("When a landlord by agreement or voluntarily offers a program to protect the premises, he must perform the task in a reasonable manner and where a harm follows a reasonable expectation of that harm, he is liable. The duty is one of reasonable care under the circumstances. It is not the duty of an insurer and a landlord is not liable unless his failure is the proximate cause of the harm."); *Atlanta Ctr. (A.B.V.I. Corp.) v. Cox*, 341 S.E.2d 15, 16 (1986) (finding that, "even assuming that there might have been no initial duty to provide security . . . having undertaken to perform that very duty, [the hotel] was required to perform it in a non-negligent manner."). Courts have also found that if security features have been made available for the protection of the premises, they do not satisfy the duty of protection unless they are actually utilized. *See, e.g.*, *Rosa v. 1220 Uncle's, Inc.*, 2001 Pa. Dist. & Cnty. Dec. LEXIS 729, at *15-16 (Pa. D. & C. Mar. 30, 2001) (finding that defendant breached the duty it had to protect patrons where defendant claimed that it installed video cameras to protect invitees but the monitoring of the video cameras was "lax at best" and the bar was not reasonably policed).

Ambiguities in the controlling law are to be resolved in favor of the non-removing party. *See Alexander*, 13 F.3d at 949. This is not a situation where fraudulent joinder is obvious—e.g., a claim barred by the statute of limitations or some other preclusive doctrine. *See Thomas v. Silgan Containers Mfg. Corp.*, No. 18-817, 2018 U.S. Dist. LEXIS 151147, at *7 (D.N.J. Aug. 14, 2018). The cases cited by Defendants, such as *Wilburn*, do not "approach the point on the spectrum representing a lopsided presentation of legal authority for [their] position." *See Kent State Univ. Bd. of Tr. v. Lexington Ins. Co.*, 512 F. App'x 485, 493 (6th Cir. 2013). The fact that the parties

have devoted significant portions of their briefs arguing over whether such a duty exists and whether it would apply to Greenhaven is illustrative of the uncertainty surrounding the viability of Gipe's claim. (*See, e.g.*, D.N. 1, PageID # 7-15; D.N. 4-1, PageID # 90-92; D.N. 12, PageID # 121-125; D.N. 17, PageID # 164-170; D.N. 19-1, PageID # 276-278; D.N. 28, PageID # 348-349) It is not clear under Kentucky law whether Greenhaven assumed a duty of protection, and the decisions from other jurisdictions do not point conclusively in one uniform direction in such a manner as to render Gipe's claim invalid. *See Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999 ("The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery.")

Novelty does not necessarily render a claim inoperative. *See id.* ("Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly 'novel' issue such as this cannot be the basis for finding fraudulent joinder."). The viability of Gipe's claims against Greenhaven is a legal dispute better suited to resolution via a fully briefed dispositive motion, not in the context of the limited fraudulent-joinder inquiry. *See Thomas*, U.S. Dist. LEXIS 151147, at *7. There are disputed questions of fact and ambiguities in Kentucky law which must be resolved in Gipe's favor. *See Alexander*, 13 F.3d at 949. Uncertainty as to whether Gipe's claims will ultimately succeed on the merits does not mean that Greenhaven was fraudulently joined. *See Walker*, 2014 U.S. Dist. LEXIS 41635, at *26. Because the Court finds Gipe's claims against Greenhaven colorable, it finds that Greenhaven was not fraudulently joined.

**B. Fraudulent Misjoinder**

In the alternative, Medtronic asks that the Court disregard Greenhaven's citizenship on the ground that Greenhaven is "fraudulently *mis*joined under Rule 20." (D.N. 1, PageID # 19) Similar

to fraudulent joinder, "[t]he purpose of the [fraudulent misjoinder] doctrine is to sever improperly joined claims against non-diverse defendants and remand those claims to state court, while retaining diversity jurisdiction over the properly-joined claims against the diverse defendants." *Estate of Owens*, 2013 U.S. Dist. LEXIS 189836, at *11 (citing *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 599 (E.D. Ky. 2011)). Under the fraudulent-misjoinder doctrine, however, "a plaintiff has a cause of action against a non-diverse party, but that claim does not arise from the same transaction or occurrence, or the cause of action does not stem from a common question of law or fact." *Staubus*, 2017 U.S. Dist. LEXIS 173759, at *8 (citing Fed. R. Civ. P. 20; *Tapscott v. MS Dealer Serv. Co.*, 77 F.3d 1353, 1360 (11th Cir. 1996)).

The Sixth Circuit has not adopted the fraudulent-misjoinder doctrine. *See Kent State*, 512 F. App'x at 491 n.1. This Court has therefore declined to apply the doctrine in the past. *See Sandusky*, 2018 U.S. Dist. LEXIS 73839, at *4 n.1 (W.D. Ky. May 2, 2018) ("As Sandusky correctly points out . . . the fraudulent-misjoinder doctrine has not been adopted by the Sixth Circuit." (citing *Kent State*, 513 F. App'x at 491 n.1)). The Court likewise declines to apply it in this case. Because Greenhaven was properly joined, complete diversity has not been established in this case and the Court lacks subject-matter jurisdiction.[3]

**C. Severance**

Medtronic suggests that the Court adopt the approach of *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 U.S. Dist. LEXIS 68906 (E.D. Ky. May 28, 2015), to find that it can exercise jurisdiction over this matter by severing the non-diverse defendant, Greenhaven.

---

[3] In light of this conclusion, the Court need not decide whether consent was required, whether MiniMed's Notice of Removal "cured" any defects in Medtronic's original Notice, or whether Greenhaven consented to removal by opposing Gipe's motion to remand. (*See* D.N. 12, PageID # 106; D.N. 17, Page ID # 164, 171; D.N. 34, PageID # 439-40)

14

More recent cases in the Eastern District of Kentucky have distinguished *Mayfield*, however, on the ground that there, the case had already been conditionally transferred to multidistrict litigation. *See Hoskins v. 3M Co.*, No. 6:17-CV-304-KKC, 2018 U.S. Dist. LEXIS 29094, at *17-18 (E.D. Ky. Feb. 23, 2018); *Johnson v. Bartley*, No. 15-56-ART, 2015 U.S. Dist. LEXIS 126706, at *8 (E.D. Ky. Sept. 21, 2015). The *Hoskins* and *Johnson* courts found that this transfer to the MDL in *Mayfield* created an "undeniable upside" to the dual litigation that would result from severance. *Id.* This Court has not applied the approach of *Mayfield* in the MDL context or otherwise.

The Court finds a different Eastern District case to be more persuasive. In *Estate of Owens*, the defendants asked the court to sever the claims against two defendants before considering whether there was diversity. 2013 U.S. Dist. LEXIS 189836, at *23. The court found that such an approach would exceed the authority of the federal courts, and that to decide a procedural issue without first assuring the court's jurisdiction over the case would "put the proverbial cart before the horse." *Id.* The court explained that "the issue of subject matter jurisdiction is threshold to the court's authority to invoke its jurisdiction to proceed with an action." *Id.* (quoting *Stone*, 782 F.2d at n.3 (6th Cir. 1986)). It further noted that "[t]his requirement 'springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.'" *Id.* (quoting *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94-95 (1998)). The court concluded that it would be improper to take any action in a case over which it lacked jurisdiction for the sole purpose of *creating* jurisdiction. *Id.* Because the defendants were properly joined, the court held that severance was not warranted under Rule 21, even if it would be proper to consider severance before jurisdiction. *Id.*

The Court is persuaded by the holding in *Estate of Owens*. Notably, *Mayfield* failed to cite *Estate of Owens* or even discuss the issue of whether a court may decide severance before

15

separately determining whether it has subject-matter jurisdiction. *See Mayfield*, 2015 U.S. Dist. LEXIS 68906. Rather, the court in *Mayfield* merely stated that it could not exercise jurisdiction over the case unless one of the defendants was severed. *Id.* at *8. In *Estate of Owens*, however, the court found that severing a defendant for the sole purpose of creating jurisdiction would exceed the authority given to federal courts under Article III of the Constitution. 2013 U.S. Dist. LEXIS 189836 at *23. Finally, unlike *Mayfield*, this case has not been transferred to an MDL. *See Hoskins*, 2018 U.S. Dist. LEXIS 29094, at *17-18. Because the Court has already determined that it lacks subject-matter jurisdiction over this case, it declines to consider severing Greenhaven. *See Estate of Owens*, 2013 U.S. Dist. LEXIS 189836, at *23.

**D. Attorney Fees**

Having concluded that this action was improperly removed, the Court must determine whether to award Gipe the costs and attorney fees incurred in filing her motion. In her second motion to remand, Gipe asks the Court to award just costs on the ground that MiniMed "lacks an objectively reasonable basis for seeking removal." (D.N. 31, PageID # 400) Gipe did not move for attorney fees in her original motion to remand (*see* D.N. 14), but MiniMed's Notice of Removal is nearly identical to Medtronic's original Notice. (*See* D.N. 1; D.N. 18) Therefore, although the Court will refer to its discussion of Medtronic's Notice of Removal in determining whether MiniMed had an objectively reasonable basis for seeking removal, the Court will only be determining whether Gipe is entitled to fees from MiniMed.

"Section 1447(c) permits the Court to order the removing party to pay just costs and any actual expenses, including attorney fees, incurred as a result of the removal if the case is remanded." *Estate of Owens*, 2013 U.S. Dist. LEXIS 189836, at *24. "Absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively

16

reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). The Sixth Circuit has similarly instructed that "an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least *some* finding of fault with the defendant's decision to remove." *Warthman v. Genoa Twp. Bd. of Tr.*, 549 F.3d 1055, 1059-60 (6th Cir. 2005).

Gipe argues that a procedural defect such as "[l]ate removal can be an unreasonable basis supporting an award of attorney's fees." *Tamburro v. K&M Int'l, Inc.*, No. 5:16-cv-1854, 2017 U.S. Dist. LEXIS 101209, at *5 (N.D. Ohio June 29, 2017) (citation omitted). She argues that removing a case only to have it remanded "delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Id.* at *6 (quoting *Martin*, 546 U.S. at 140). The Court notes that it did not address the procedural validity of MiniMed's Notice of Removal, as its decision that Greenhaven was properly joined rendered that Notice moot. Regardless of whether MiniMed's Notice was proper, the Court finds that Medtronic (and therefore MiniMed) had an "objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141.

While Medtronic/MiniMed's arguments did not prevail, they were not unreasonable, particularly given the unsettled law and facts discussed at length above. *See Estate of Owens*, 2013 U.S. Dist. LEXIS 189836, at *24. Further, there is no indication that this case was removed "solely with the intent to delay the proceedings." *Nagarajan v. Ostruskza*, No. 5:12-CV-91-TBR, 2012 U.S. Dist. LEXIS 149998, at *12-*13 (W.D. Ky. Oct. 18, 2012). An award of attorney fees is thus not warranted here. *See Martin*, 546 U.S. at 136; *see also Warthman*, 549 F.3d at 1059-60.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Gipe's motion to remand (D.N. 14) is **GRANTED**. This matter is **REMANDED** to Jefferson Circuit Court and **STRICKEN** from this Court's docket.

(2) Medtronic, Inc.'s motion to sever (D.N. 4), Medtronic MiniMed, Inc.'s motion to sever (D.N. 19), and Gipe's second motion to remand (D.N. 31) are **DENIED** as moot.

(3) Gipe's request for fees and costs (D.N. 31, PageID # 400-402) is **DENIED**.

September 24, 2019

**David J. Hale, Judge**
**United States District Court**